## In the Matter of Charles Canterbury CORBIN, Attorney–Respondent.

### No. 98SA432.

Supreme Court of Colorado,
En Banc.

Feb. 16, 1999.

Linda Donnelly, Attorney Regulation Counsel, Deborah A. Elsas, Assistant Regulation Counsel, Denver, Colorado.

Charles Canterbury Corbin, Pro Se, Denver, Colorado.

## PER CURIAM.

The respondent and the complainant in this lawyer discipline case entered into a stipulation, agreement, and conditional admission of misconduct. *See* C.R.C.P. 241.18. The conditional admission recommended that the respondent, Charles Canterbury Corbin, be either suspended for three years or be disbarred, with certain restitution to be made prior to reinstatement or readmission. An inquiry panel of the supreme court grievance committee approved the conditional admission and recommended that the respondent be suspended for three years, but that the date of the suspension be made retroactive to September 18, 1997, the date on which he was immediately suspended. We accept the conditional admission and order that Corbin be suspended for three years, but that the effective date is the date this opinion is released.

### I.

Charles Canterbury Corbin was licensed to practice law in this state in 1987. He was immediately suspended from the practice of law on September 18, 1997, pending further order of this court. The conditional admission proposes to resolve the charges contained in four separate complaints filed against Corbin. It provides as follows.

### A.

#### *Peggy Archuleta–Deshon*

Peggy Archuleta–Deshon hired Corbin to represent her in obtaining a patent for a disposable shower mat that she invented. In June 1995, she paid him a $700 advance fee and $365 for a patent application. On March 21, 1996, the patent office sent Corbin a notice of allowance and a request for the issue fee, which stated that his client's appli-

cation for issuance of a patent was allowed so long as $625 was paid and updated drawings submitted by June 24, 1996. Corbin failed to notify his client of the notice of allowance he had received on her behalf, or its requirements.

In April 1996, Archuleta–Deshon told Corbin that she was moving to Pennsylvania, and he misrepresented to her that he had heard nothing about her patent application. He gave her the same answer when she called him monthly, until October 1996, when he stopped returning her phone calls. Finally, in response to her demand for information in December 1996, Corbin sent her the March 1996 notice of allowance by facsimile transmission. He told her he had lost her file, but would revive her patent and pay any penalty assessed. Corbin asked her for $150 to have the drawings prepared and $625 for the patent issuance fee.

On February 3, 1996, Archuleta–Deshon sent Corbin a check for $150, which he cashed. She also sent him a second check made out to the patent office for $625.00, which has never been cashed. She has not been able to contact Corbin since.

Corbin admits that the foregoing conduct violated Colo. RPC 1.3 (neglecting a legal matter entrusted to the lawyer), 1.4(a) (failing to keep a client reasonably informed), 1.4(b) (failing to explain a legal matter to a client to the extent reasonably necessary for the client to make an informed decision), 1.15(a) (failing to hold client property separate from the lawyer's own property), 1.16(d) (failing to take reasonable steps upon termination of representation to protect a client's interests), and 8.4(c) (engaging in conduct involving dishonesty, deceit, fraud, or misrepresentation).

### B.

#### Oscar Franklin and Ronald K. Sobieck

Oscar Franklin retained Corbin in March 1995 to file and prosecute his patent application for a name tag. He paid Corbin a $300 advance fee. In June and July 1996, the patent office sent correspondence to Corbin, but he failed to take the necessary action. Franklin's patent application was therefore deemed abandoned on October 13, 1996. Corbin did not communicate with Franklin during this time period in 1996.

In another matter, Ronald K. Sobieck hired Corbin on March 27, 1995, to file and prosecute his patent application for a painter's equipment carrier. Sobieck paid Corbin $800, half of the agreed attorney fee, and a $365 filing fee by August 1995. Corbin filed the application in September and forwarded the filing receipt to Sobieck in October 1995, telling him the application could take up to twenty-four months to be processed. Sobieck paid Corbin the remaining $800 of his fee. Because Corbin failed to take the necessary action on the application, the application was deemed abandoned on July 24, 1996.

Corbin told his client that he would check on the status of his patent application when Sobieck called on February 17, 1997. Corbin did not call back. Sobieck's subsequent letter was returned as undeliverable, and Corbin's telephone had been disconnected.

Corbin stipulated that his conduct in the Franklin and Sobieck matters violated Colo. RPC 1.3 (neglecting a legal matter), 1.4(a) (failing to keep a client reasonably informed), 1.5(a) (charging an unreasonable fee), and 1.16(d) (failing to take reasonable steps upon termination of representation to protect a client's interests).

### C.

#### Jane V. Carmichael

Corbin has handled patent work for Jane V. Carmichael since 1990. She also retained him to apply for a trademark. When she tried to call him in March 1997, she discovered that his telephone had been disconnected. Moreover, Corbin did not advise Carmichael that he had been immediately suspended on September 18, 1997, as required by C.R.C.P. 241.21(b). His failure to communicate with his client and to take reasonable steps upon termination of the client-attorney relationship violated Colo. RPC 1.4(a) and 1.16(d).

### D.

#### Deanna Urs

In January 1996, Deanna Urs hired Corbin to represent her with respect to a baby car

seat weather shield she had invented. She paid him an advance fee of $350 and $200 for the patent application. Corbin filed the application and forwarded the filing receipt to Urs on June 30, 1996, informing her he would keep her advised of progress in the matter.

Urs also paid him $275 to file a trademark application for her invention. Corbin filed the application and forwarded the filing receipt to her on March 4, 1997.

The patent office sent Corbin a notice of allowability for Urs's invention on March 12, 1997, which provided that revised drawings and issuance fees be submitted within three months. When he sent her the notice on March 17, Corbin asked for an additional $220 for the issuance fee and $180 for the drawings. On May 22, 1997, Urs sent Corbin checks in those amounts, which were cashed. She was unable to contact Corbin in July 1997, however, and he did not notify her of his immediate suspension on September 18, 1997. In the Urs matter, Corbin's conduct once again violated Colo. RPC 1.3, 1.4(a), 1.5(a), and 1.16(d); as well as C.R.C.P. 241.21(b).

## II.

The conditional admission recommended that Corbin be suspended for three years or disbarred. The inquiry panel selected three years, with the effective date of the suspension retroactive to the date of Corbin's immediate suspension in September 1997. As part of the conditional admission, Corbin has agreed to make restitution to the affected clients as a condition for reinstatement or readmission.

Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), in the absence of mitigating factors, disbarment is *generally appropriate* when:

> (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
>
> (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

> (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards* 4.41; *see, e.g., People v. Townshend*, 933 P.2d 1327, 1329 (Colo.1997) (disbarring lawyer who accepted advance fees from two clients, then effectively abandoned them and failed to account for or return the unearned retainers she collected, thereby converting those funds to her own use). Suspension is *generally appropriate* when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." ABA *Standards* at 4.42. Previous cases would support either a long suspension or disbarment for Corbin. *See, e.g., People v. Henderson*, 967 P.2d 1038, 1041 (Colo.1998)(accepting conditional admission and recommendation of three-year suspension rather than disbarment where lawyer effectively abandoned four clients, but had no previous discipline, was experiencing personal problems, and exhibited remorse); *People v. Reynolds*, 933 P.2d 1295, 1305 (Colo.1997) (concluding that three-year suspension rather than disbarment was warranted by attorney's pattern of misconduct in light of mitigating factors of no previous discipline and personal and emotional problems at the time of the misconduct); *People v. Murray*, 887 P.2d 1016, 1021 (Colo.1994) (stating that attorney who knowingly failed to perform services for client with potential of serious injury to client and engaging in pattern of neglect with respect to client matters warrants disbarment); *People v. Anderson*, 817 P.2d 1035, 1037 (Colo.1991) (suspending attorney for three years who failed to properly withdraw from cases or file a change of address because such acts were mitigated by absence of significant history of discipline).

█ We conclude that this case is similar to *Henderson.* Like the lawyer in *Henderson,* Corbin has no previous discipline, was experiencing personal and emotional problems at the time of the misconduct, and has demonstrated remorse, all of which are mitigating factors for the purpose

of fixing the proper level of discipline. *See* ABA *Standards* 9.32(a), (c), (*l*). The complainant also indicates the presence of a chemical dependency including alcohol abuse. *See id.* at 9.32(i).

Taking these factors into account, we agree with the inquiry panel that a three-year suspension is adequate, although the question is a close one. In fact, at least two members of this court would have disbarred Corbin.

■ Nevertheless, we find retroactive discipline inapplicable under these facts and our prior cases. In *People v. Abelman,* 804 P.2d 859 (Colo.1991), we set out the factors to be considered in determining whether retroactive discipline is appropriate: "[W]hether the conduct is part of a continuing pattern or whether there is only a single instance of misconduct; whether there is a significantly attenuated relationship between the misconduct and the practice of law; and whether the passage of time mitigates the severity of the discipline required." *Id.* at 862. The pattern of misconduct and its direct relationship to the practice of law renders retroactive discipline inappropriate. *See People v. Lujan,* 890 P.2d 109, 113 (Colo.1995). Accordingly, we accept the conditional admission, but reject the inquiry panel's recommendation that the date of Corbin's suspension be made retroactive to the date of his immediate suspension.

### III.

It is hereby ordered that Charles Canterbury Corbin be suspended from the practice of law for three years, effective immediately upon the issuance of this opinion. Prior to reinstatement, and as a condition thereof, Corbin must make restitution to the following persons:

(1) $1,215 plus statutory interest from February 3, 1997, to Peggy Archuleta–Deshon;

(2) $300 plus statutory interest from March 31, 1995, to Oscar Franklin;

(3) $1,965 plus statutory interest from October 31, 1995, to Ronald K. Sobieck; and

(4) $1,225 plus statutory interest from May 22, 1997, to Deanna Urs.

Corbin is further ordered to pay the costs of this proceeding in the amount of $1,106.59 within thirty days to the Attorney Regulation Committee, 600 Seventeenth Street, Suite 200 South, Denver, Colorado 80202–5432. Corbin shall not be reinstated until after he has complied with C.R.C.P. 251.29.