The PEOPLE of the State of
Colorado, Complainant,

v.

Charles C. CORBIN, Respondent.

No. 02PDJ039.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Nov. 20, 2003.

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board Members HELEN R. STONE and PAUL WILLUMSTAD, both members of the bar.

## REPORT, DECISION AND IMPOSITION OF SANCTION

### *SANCTION IMPOSED: ATTORNEY DISBARRED*

### I. BACKGROUND

The People filed a Complaint in this matter on May 17, 2002. The Citation and Complaint were sent via regular and certified mail to the respondent on the same date. The People filed a Proof of Service of Citation and Complaint on June 6, 2002. The Proof of Service showed that the Office of Attorney Regulation Counsel sent Respondent Charles C. Corbin ("Corbin") a certified mailing of the Citation and the Complaint at his registered address in Denver, Colorado. Respondent failed to file an Answer or otherwise respond to the Complaint.

On July 10, 2002, upon the People's motion, the PDJ entered default as to the facts set forth in the Complaint, which were deemed admitted, and as to the claims set forth in the Complaint, which were deemed established. On October 22, 2002, the PDJ vacated the entry of default and the hearing, based on a question of law which remained unresolved by the Complaint: whether an attorney could continue to practice before the United States Patent and Trademark Office although suspended from the practice of law in Colorado.

The People filed an Amended Complaint on January 13, 2003. The Amended Complaint was sent via regular mail to Corbin on the same date. Corbin failed to file an Answer or otherwise respond to the Amended Complaint. On March 5, 2003, upon the People's Motion, the PDJ entered default as to the facts set forth in the Complaint, which were deemed admitted, and as to three claims set forth in the Amended Complaint—Colo. RPC 5.5(a) in Claim I; Colo. RPC 8.4(c) in Claim II; Colo. RPC 3.4(c) in Claim III, which were deemed established. Corbin had adequate notice of the hearing and did not appear in person or through counsel.

A Sanctions Hearing pursuant to C.R.C.P. 251.15(b) was held on October 22, 2002, before the Hearing Board consisting of the Presiding Disciplinary Judge ("PDJ") and two Hearing Board Members, Helen R. Stone and Paul Willumstad, both members of the bar. A continued hearing was held on June 16, 2003. Debora D. Jones, Assistant Regulation Counsel, represented the People of the State of Colorado at both hearings. Corbin did not appear either in person or by counsel at the hearing. At the Sanctions Hearing on October 22, 2002, the People's exhibits 1 through 9 were admitted into evidence. Subsequently, on June 16, 2003, the People's exhibits 10 and 12 were admitted into evidence. The Hearing Board considered the People's argument, the facts established by the entry of default, and the exhibits, and made the following findings of fact, which were established by clear and convincing evidence.

### II. FINDINGS OF FACT

Corbin has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on January 14, 1987, and is registered upon the official records of the Colorado Supreme Court, registration number 16382. Corbin is subject to the jurisdiction of this Court pursuant to C.R.C.P. 251.1(b).

All factual allegations set forth in the Amended Complaint were deemed admitted by the entry of default, and are therefore established by clear and convincing evidence. *See* the Amended Complaint attached hereto

as exhibit 1. The entry of default as to violations of Colo. RPC 5.5(a), 3.4(c) and 8.4(c) determined that the alleged violations of the Rules of Professional Conduct set forth in the order were established.

### III.  CONCLUSIONS OF LAW

Corbin was immediately suspended from the practice of law in Colorado on September 18, 1997, and has not applied for reinstatement. Corbin's practice included appearances in twelve trademark matters before the United States Patent and Trademark Office ("Office") despite his suspension in Colorado. Under the relevant federal regulations, and the case law interpreting them, such practice was in violation of the rules governing the practice of law. The relevant federal regulations provide that a trademark owner[1] may only be represented by an attorney or other individual authorized to practice in trademark cases; the provision does not include agents (non-lawyers). 37 C.F.R. § 2.11 (2003). Definitions pertaining to practice before the Office specify what is meant by the term "attorney" or "lawyer":

> Attorney or lawyer means an individual who is a member in good standing of the bar of any United States court or the highest court of any State. A "non-lawyer" is a person who is not an attorney or lawyer.

37 C.F.R. § 10.1(c). There is no category of non-lawyer agents in trademark matters.

Practitioners before the Office include (1) an attorney *or agent in patent* cases or (2) an individual authorized under 5 U.S.C. § 500(b)[2] or otherwise[3] to practice before

the Office in *trademark or other non-patent cases.* 37 C.F.R. § 10.1(r).(emphasis supplied). Thus, attorneys in good standing in a state or other court may represent others before the Office in trademark cases, while non-lawyers (with an exception inapplicable here) may *not.*[4] *Id.* § 10.14(b).

The framework for practice before the Office in patent cases is differentiated from that in trademark cases. Non-lawyers are specifically permitted to practice in patent cases, but are not permitted to practice in trademark cases. Failure to specifically include non-attorneys in trademark matters while including them in the patent area supports the conclusion that the omission was intentional. *Beeghly v. Mack,* 20 P.3d 610, 613 (Colo.2001) (under rule of interpretation *expressio unius exclusio alterius,* the inclusion of certain items implies the exclusion of others).

According to these regulatory provisions, the respondent could only practice before the Office in trademark cases if he was in good standing of the bar of any United States court or the highest court of any state. Evidence was presented that showed the respondent was not in good standing in any court at the time of the incidents in question.[5] Having been suspended by the Colorado Supreme Court, the respondent's continued practice in trademark cases constituted the unauthorized practice of law.

In *Marinangeli v. Lehman,* 32 F.Supp.2d 1 (D.D.C.1998), the subject attorney had been suspended in New York and New Jersey for disciplinary reasons related to felony theft. When an investigator for the Office

---

**1.** The owner of a trademark may file or prosecute his or her own application for registration of a trademark.

**2.** 5 U.S.C. § 500(b) provides that any individual who is a *member in good standing* of the bar of the highest court of a State may represent a person before an administrative agency on filing with the agency a written declaration that he is currently qualified and is authorized to represent a particular person in whose behalf he acts (emphasis supplied).

**3.** Individuals who are not attorneys but were recognized to practice before the Office in trademark cases prior to January 1, 1957, are recognized as agents who may continue to practice

before the Office in trademark cases. There is no evidence that the respondent qualifies for this exception.

**4.** An attorney is not required to apply for registration or recognition to practice before the Office in trademark and other non-patent cases. 37 C.F.R. § 10.14(a).

**5.** On February 10, 1998, pursuant to reciprocal discipline provisions, the respondent was immediately suspended in Ohio, where he was also registered. *Disc. Counsel v. Corbin,* 81 Ohio St.3d 1231, 690 N.E.2d 9 (1998). The respondent has not applied for reinstatement from this or any other suspension in Ohio.

received this information, the investigator informed Marinangeli that he could no longer practice before the Office in trademark cases because of his suspension in New York and New Jersey. Marinangeli was, however, able to continue practicing before the Office as a patent agent, because he did not need bar membership to do so. The Office filed a disciplinary complaint against Marinangeli in 1995 in relation to the felony theft conviction. Thereafter, Marinangeli was suspended for two years for practicing before the Office in patent and trademark cases, even though he had been reinstated from his suspensions in New York and New Jersey. The District Court determined that the subsequent suspension was appropriate. The court noted that it was undisputed that Marinangeli continued to practice trademark law despite being suspended from the New York and New Jersey bars. The court pointed out that attorneys are expected to know and abide by the disciplinary rules, which Marinangeli had not done.

■ The respondent initiated at least 12 separate applications for trademarks on behalf of others after February 10, 1998, the date of his suspension in Ohio. Each of the 12 trademark applications lists Charles C. Corbin as the attorney of record and lists the respondent's address as 1306 South Parker Road, # 375, Denver, Colorado 80231. Thus, the respondent continued to hold himself out as an attorney properly licensed in Colorado even after his suspension in Colorado and Ohio.

By the foregoing acts, respondent violated Colo. RPC 5.5, which provides that a lawyer shall not practice law in a jurisdiction where doing so violates the regulations of the legal profession in that jurisdiction. The respondent's filing of trademark applications and representation of trademark owners before the Office constituted the practice of law. Under the Office's regulations, the respondent was only authorized to practice in that jurisdiction if he was in good standing in a United States court or in the highest court of

some state. The respondent was not in good standing in a United States Court or a state court from February 10, 1998, through 2002. Therefore, he was not authorized to practice trademark law during that time frame. The respondent's practice of law violated the Office's regulations and thus violated Colo. RPC 5.5(a).

### *Colo. RPC 8.4(c)*

■ The respondent represented Space Research Corporation ("Space Research") in a trademark matter before the Office. Space Research sought registration of the trademark "STARDUST" in connection with jewelry, application number 75/367346. On or about November 9, 1999, Space Research, through its president Jeff Murphy, appointed the respondent to prosecute Space Research's trademark application. At that time, the respondent had been suspended from the practice of law in both Colorado and Ohio. He was not in good standing with the bar of any United States or state court. He was, therefore, not authorized to practice trademark law before the Office.

The respondent did not notify Space Research that he was suspended from the practice of law in Colorado and Ohio. The respondent did not notify Space Research that he could not practice before the Office in the area of trademark law. By his omission, the respondent acted dishonestly and deceitfully. His omission constituted misrepresentation. Through his conduct, the respondent violated Colo. RPC 8.4(c).[6]

### *Colo. RPC 3.4(c)*

■ The respondent's entry of appearance in the Space Research trademark application for Stardust occurred on or about November 9, 1999. This date is after the respondent's suspension in Ohio, a time when the respondent could no longer practice in trademark matters. The respondent knowingly disobeyed C.R.C.P. 251.28(a)[7] by accepting the Stardust trademark application for Space

---

**6.** Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

**7.** C.R.C.P. 251.28(a) provides that, after entry of an order of suspension, an attorney may not accept any new retainer or employment as an attorney in any new case or legal matter.

Research at a time that he was prohibited from accepting any new employment as an attorney in any new case or legal matter. By such conduct, the respondent violated Colo. RPC 3.4(c).[8]

## III. IMPOSITION OF SANCTION

■ Disbarment is generally appropriate when a lawyer knowingly practices law in violation of an order of suspension, and causes injury or potential injury to a client. ABA *Standards for Imposing Lawyer Sanctions* ("ABA *Standards*") § 8.1. *See, also, People v. Zimmermann*, 960 P.2d 85 (1998) (attorney was disbarred for, *inter alia*, practicing law while suspended); *People v. Wilson*, 832 P.2d 943 (Colo.1992)(attorney disbarred for practicing law while suspended). Here, respondent's practice of law while under suspension warrants disbarment.

The presumed sanction is disbarment where an attorney knowingly deceives a client with the intent to benefit the lawyer or another, and causes serious injury or potentially serious injury to a client. ABA *Standards* § 4.61.

Pursuant to ABA *Standards* 9.22 to 9.32 respectively, the Hearing Board considered aggravating and mitigating factors in arriving at the appropriate sanction. Since Corbin did not participate in these proceedings, no mitigating factors were established. The facts deemed admitted in the Complaint established several aggravating factors pursuant to ABA *Standards* § 9.22. Corbin had a dishonest or selfish motive. ABA *Standards* § 9.22(b). Corbin engaged in a pattern of misconduct. ABA *Standards* § 9.22(c). Corbin failed to respond reasonably to a lawful demand for information from the disciplinary agency, thereby obstructing the disciplinary proceeding. ABA *Standards* § 9.22(e). An additional aggravator is Corbin's substantial experience in the practice of law. ABA *Standards* § 9.22(i).

Moreover, Corbin has had prior discipline, an aggravating factor under ABA *Standards* 9.22(a). On February 16, 1999, Corbin was suspended for three years for neglect, failure

to communicate with clients, misrepresentation, and excessive fees. Corbin practiced law while suspended by filing trademark applications and a motion for reconsideration with the Office. In addition, he ignored the suspension order and misrepresented to clients that he was still authorized to practice law. Corbin's failure to participate in these proceedings confirms that disbarment is warranted.

## IV. ORDER

It is therefore ORDERED:

1. CHARLES C. CORBIN, attorney registration 16382, is DISBARRED from the practice of law effective thirty-one days from the date of this Order.

2. Corbin is ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.

## EXHIBIT 1

Debora D. Jones, # 16917, Assistant Regulation Counsel, John S. Gleason, # 15011, Regulation Counsel, Denver, for Complainant

## AMENDED COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on January 14, 1987, and is registered upon the official records of this court, registration no. 16382. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 777 Grant Street, Suite 300, Denver, CO 80203. Another known address is 1306 S. Parker Road, # 375, Denver, CO 80231–2146.

---

8. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

## General Information

2. The respondent was immediately suspended from the practice of law in Colorado on September 18, 1997. *People v. Corbin,* slip op., case no. 97SA338 (Colo.1997). A copy of the Colorado Supreme Court's order was mailed to the respondent at his home and registered addresses. The records indicate that the envelope to his registered address (777 Grant Street, # 300, Denver, CO 80203) was not returned as undeliverable. The respondent has not applied for reinstatement from this or any other suspension in Colorado.

3. On February 10, 1998, pursuant to reciprocal discipline provisions, the respondent was immediately suspended in Ohio, where he was also registered. *Disc. Counsel v. Corbin,* 81 Ohio St.3d 1231, 690 N.E.2d 9 (1998). The respondent has not applied for reinstatement from this or any other suspension in Ohio.

4. Thereafter, a stipulation was reached between the respondent and the People for the respondent's misconduct in Colorado. As a result, the respondent was suspended from the practice of law in Colorado for three years on February 16, 1999, effective that date. *People v. Corbin,* 973 P.2d 1273 (Colo. 1999). The respondent participated in the stipulation which resulted in this three-year suspension. The respondent's address provided on the stipulation was 1306 So. Parker Rd., Apt. 375, Denver, CO 80231–2146 ("the Parker Road address").

5. The order of suspension was mailed *via* certified mail to the respondent on or about February 16, 1999, to the Parker Road address, but was returned unclaimed. The letter sent by regular mail to the Parker Road address which provided a copy of the Colorado Supreme Court order of a three-year suspension was not returned as undeliverable.

6. The respondent's suspension in Ohio has remained in effect, and shall remain in effect, until he is reinstated in the State of Colorado. *See* Letter of Jonathan W. Marshall, Secretary to the Supreme Court of Ohio Board of Commissioners on Grievances and Discipline, Exhibit A, attached hereto and incorporated by reference. As the respondent has not been reinstated in Colorado, he is not eligible for and has not been reinstated in Ohio.

7. Upon information and belief, from February 1998 to the present time, the respondent has not been in good standing in any federal court or in the highest court of any state.

## Claim I

### [Practice of Law in a Jurisdiction in Violation of the Legal Profession Regulations in that Jurisdiction—Colo. RPC 5.5(a) ]

8. Paragraphs 1 through 7 are incorporated herein by reference.

9. Public information documents accessed through the U.S. Patent and Trademark Office ("the Office") website on the Internet indicate that at least 12 separate applications for trademarks were initiated by respondent Charles C. Corbin after February 10, 1998, the date of his suspension in Ohio. Each of the 12 trademark applications lists Charles C. Corbin (the respondent) as the attorney of record and lists the respondent's address as 1306 South Parker Road, # 375, Denver, Colorado 80231. Thus, the respondent continued to hold himself out as an attorney properly licensed in Colorado even after his suspension in Colorado and Ohio.

10. 37 C.F.R. § 2.11 provides that a trademark applicant [9] may only be represented by an attorney or other individual authorized to practice in trademark cases; the provision does not include agents (non-lawyers).

11. An attorney or lawyer means an individual who is a member in good standing of the bar of any United States court or the highest court of any State. A "non-lawyer" is a person who is not an attorney or lawyer. 37 C.F.R. § 10.1(c).

---

9. The owner of a trademark may file or prosecute his or her own application for registration of a trademark.

12. Individuals who are not attorneys but were recognized to practice before the Office in trademark cases prior to January 1, 1957, are recognized as agents who may continue to practice before the Office in trademark cases. The respondent's date of birth is January 8, 1946. The respondent was less than 11 years old on January 1, 1957, and was not recognized by the Office as an authorized practitioner.

13. At the time the respondent filed the trademark applications referenced in paragraph 9 above, he was not in good standing with either the Colorado or Ohio Supreme Court.

14. The respondent was not admitted and in good standing with the bar of any United States court during 1998 through 2002.

15. The respondent was not admitted and in good standing with the bar of any state court during 1998 through 2002.

16. Colo. RPC 5.5(a) provides that a lawyer shall not practice law in a jurisdiction where doing so violates the regulations of the legal profession in that jurisdiction.

17. The respondent's filing of trademark applications and representation of trademark owners before the Office constituted the practice of law. Under the Office's regulations, the respondent was only authorized to practice in that jurisdiction if he was in good standing in a United States court or in the highest court of some state.

18. The respondent was not in good standing in a United States Court or a state court from February 10, 1998, through 2002. Therefore, he was not authorized to practice trademark law during that time frame. The respondent's practice of law violated the Office's regulations.

19. The respondent's practice of trademark law while he was suspended was in violation of a jurisdiction's regulations of the legal profession, in violation of Colo. RPC 5.5(a).

20. The foregoing conduct of the respondent establishes grounds for discipline as provided in C.R.C.P. 251.5; and violates Colo. RPC 5.5(a) (practice of law in violation of a jurisdiction's legal profession regulations).

WHEREFORE, the complainant prays at the conclusion hereof.

### I. Claim II

[A Lawyer Shall Act With Reasonable Diligence and Promptness in Representing a Client and Shall Not Neglect a Legal Matter Entrusted to That Lawyer—Colo. RPC 1.3; A Lawyer Shall Keep a Client Reasonably Informed About the Status of a Matter, and Promptly Comply With Reasonable Requests for Information—Colo. RPC 1.4(a); A Lawyer Shall Explain a Matter to the Extent Reasonably Necessary to Permit the Client to Make Informed Decisions Regarding the Representation Colo. RPC 1.4(b); A Lawyer Shall Not Engage in Conduct Involving Dishonesty, Fraud, Deceit or Misrepresentation—Colo. RPC 8.4(c) ]

21. Paragraphs 1 through 15 are incorporated herein by reference.

22. Space Research Corporation ("Space Research") is a small business that markets products that include jewelry and novelty items relating to space themes, and to meteor particles in particular.

23. On or about September 29, 1997, Space Research filed an application seeking registration of the trademark "STARDUST" in connection with jewelry, application number 75/367346.

24. On or about November 9, 1999, Space Research, through its president Jeff Murphy, appointed Charles C. Corbin, the respondent in this disciplinary proceeding, to prosecute Space Research's trademark application referenced above.

25. Thus, an attorney-client relationship was formed, thereby creating an obligation to perform the agreed-upon services. By agreeing to perform the agreed-upon services, the respondent inherently represented that he would provide such services in accordance with the Colorado Rules of Professional Conduct.

26. At that time, the respondent had been suspended from the practice of law in both Colorado and Ohio. He was not in good standing with the bar of any United States or state court. He was, therefore, not authorized to practice trademark law before the Office.

27. The respondent did not notify Space Research that he was suspended from the practice of law in Colorado and Ohio. The respondent did not notify Space Research that he could not practice before the Office in the area of trademark law.

28. In letters dated November 23, 1993, and December 9, 1999, the respondent indicated that he had conducted various activities with the Office on behalf of Space Research, directed to obtaining registration of the trademark Stardust.

29. A notice of publication under 12(a) was issued January 7, 2000, in regard to Space Research's application. The respondent forwarded the notice of publication to Space Research on or about January 17, 2000.

30. On or about March 7, 2000, Stardust Diamond Corporation ("Stardust Diamond") filed a request for extension of time to file its notice of opposition to registration of Space Research's trademark Stardust. The respondent received a copy of this notice. The respondent did not forward these documents to Space Research until approximately April 25, 2000.

31. Stardust Diamond filed a request for further extension of time, which was granted by the Trademark Trial and Appeal Board. The respondent forwarded to Space Research a copy of the Board's grant of the extension.

32. On or about June 6, 2000, Stardust Diamond filed a notice of opposition to the application of Space Research. On June 21, 2000, the Board mailed notification to the respondent indicating that Space Research's answer was due 40 days after the mailing date of that notice (or approximately July 31, 2000). The respondent received this notification. The respondent did not forward these documents to Space Research, and he did not inform Space Research that Stardust Diamond had filed a notice of opposition and that an answer was due to the notice of opposition.

33. On or about July 31, 2000, Stardust Diamond served its first set of requests for production of documents and interrogatories by sending them to the respondent. On or about August 11, 2000, the respondent forwarded copies of these documents to Space Research. In the cover letter, the respondent did not mention that an answer in response to the notice of opposition was overdue, or whether an answer had been filed.

34. On or about September 12, 2000, the respondent provided Space Research with a letter detailing the status of Space Research's various trademark applications being prosecuted by the respondent. The respondent did not indicate that an answer should have been filed in response to Stardust Diamond's notice of opposition. The respondent did not indicate whether any discovery had been conducted or whether any discovery responses had been filed.

35. On or about October 18, 2000, the Board mailed to the respondent an order to show cause why judgment by default should not be entered against Space Research in accordance with F.R.C.P. 55(b) for failing to answer or file a motion for extension of time. The order indicated that a notice of default had previously entered against Space Research, and provided 30 days as the deadline for responding to the show cause order. The respondent received a copy of this order. The respondent did not forward this order to Space Research.

36. In late October, 2000, Space Research requested that a different law firm review its various trademark cases being prosecuted by the respondent. Attorneys from the firm Timothy J. Martin, P.C. attempted to contact the respondent numerous times over several weeks to obtain copies of Space Research's trademark files.

37. On at least one occasion, an attorney from the firm T.J. Martin, P.C., was able to reach the respondent by telephone. At that time the respondent indicated that he would forward Space Research's trademark files

promptly. However, the respondent failed to do so.

38. On or about November 18, 2000, one month after the order to show cause was issued, the respondent forwarded Space Research's files regarding several trademark matters, including the one involving Stardust, to the Law Offices of Timothy J. Martin, P.C. The file was not received by the Law Office of Timothy J. Martin, P.C., until several days thereafter.

39. The file provided by the respondent appeared to be missing various documents relating to the trademark case of Stardust. Upon organizing and reviewing the file from the respondent, Space Research became aware for the first time that (1) an answer had not been filed to the opposition notice, (2) the order to show cause had already issued by the Board, and (3) no response to the order to show cause had been filed by the respondent on behalf of Space Research.

40. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

41. The respondent failed to file any response to the Notice of Opposition, and the respondent did not file a response to the Show Cause Order. The respondent did not withdraw from the representation based on his inability to provide legal representation to Space Research.

42. The respondent was required to complete each of the specific tasks described above. Each of these failures by the respondent constitutes a separate incident of lack of diligence and promptness, and/or neglect, as do all of them together.

43. The respondent knew or should have known that his lack of diligence and promptness, and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness, and/or neglect.

44. The respondent's lack of diligence and promptness, and/or neglect caused potentially serious injury to the client.

45. By such conduct, the respondent violated Colo. RPC 1.3.

46. Colo. RPC 1.4(a) provides that a lawyer shall keep a client reasonably informed about the status of a matter.

47. The respondent failed to keep his client reasonably informed about the status of a legal matter by failing to inform his client that it needed to (1) file an answer in response to the notice of opposition or (2) request an extension of time within which to file such an answer.

48. The respondent knew or should have known that his failure to keep his client reasonably informed about the status of the matter and advise the client of the steps which needed to be taken continued over a period of months. During that time the respondent received information from the Board, but the respondent did not inform his client that it needed to obtain authorized counsel to prepare and file an answer.

49. The respondent's lack of communication caused potentially serious injury to the client.

50. The respondent's failure to communicate with his client violated Colo. RPC 1.4(a).

51. Colo. RPC 1.4(b) provides that a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

52. The respondent failed to provide adequate explanation to the client so that the client knew that it needed to obtain authorized counsel to (1) file an answer and response to the notice of opposition or (2) request an extension of time within which to file such an answer.

53. The respondent knew that his failure to explain the matter to the extent reasonably necessary continued over a period of months.

54. The respondent's failure to provide a reasonable explanation of the client's matter caused potentially serious injury to the client.

55. The respondent's failure to provide reasonable explanation to his client violated Colo. RPC 1.4(b).

56. Colo. RPC 8.4(c) provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

57. The respondent failed to inform the representative of Space Research that the respondent was no longer authorized to practice trademark law before the Office.

58. The respondent knew or should have known that he was no longer authorized to practice trademark law before the Office, and he had an obligation to inform the client of this.

59. The respondent intentionally or knowingly or recklessly failed to tell his client that the respondent was no longer authorized to practice trademark law before the Office. The respondent engaged in such knowing failure for a dishonest or selfish reason.

60. By his omission, the respondent acted dishonestly and deceitfully. His omission constituted misrepresentation.

61. Through his conduct, the respondent violated Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

## II. Claim III

[Upon Termination of Representation, a Lawyer Shall Take Steps to the Extent Reasonably Practicable to Protect a Client's Interest—Colo. RPC 1.16(d); A Lawyer Shall Not Knowingly Disobey an Obligation Under the Rules of a Tribunal—Colo. RPC 3.4(c)]

62. Paragraphs 1 through 15 and paragraphs 22 through 39 are incorporated herein by reference.

63. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as surrendering papers and property to which the client is entitled.

64. When the respondent was no longer in good standing with any federal or state court's bar, he was no longer authorized to practice law before the Office. Such lack of authorization constituted a termination of the respondent's representation of Space Research.

65. Upon such termination, the respondent should have taken steps to the extent reasonably practicable to protect the client's interests.

66. When Space Research retained other counsel and requested its files, the respondent failed to provide the files timely. Time was of the essence, as an answer to the notice of opposition had not been filed on behalf of Space Research, and an order to show cause had issued which required answer by a date certain.

67. The respondent did not take steps to the extent practicable to protect the interests of Space Research.

68. Through his conduct, the respondent violated Colo. RPC 1.16(d).

69. Colo. RPC 3.4(c) provides that a lawyer shall not knowingly disobey an obligation under the rules of a tribunal.

70. C.R.C.P. 251.28(a) provides that, after the entry of an order of suspension, an attorney may not accept any new retainer or employment as an attorney in any new case or legal matter.

71. The respondent knew, or is presumed to have known, of his obligations under said rule of a tribunal.

72. The respondent's entry of appearance in the Space Research trademark application for Stardust occurred on or about November 9, 1999. This date is after the respondent's suspension in Ohio, a time when the respondent could no longer practice in trademark matters. The respondent knowingly disobeyed C.R.C.P. 251.28(a) by accepting the Stardust trademark application for Space Research at a time that he was prohibited from accepting any new employment as an attorney in any new case or legal matter.

73. By such conduct, the respondent violated Colo. RPC 3.4(c).

WHEREFORE, it is prayed that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as described above; the respondent be appro-

priately disciplined for such misconduct; the respondent be required to take any other remedial action appropriate under the circumstances; and the respondent be assessed the costs of this proceeding.