In the Matter of Todd J. THOMPSON, Attorney-Respondent.

No. 98SA504.

Supreme Court of Colorado, En Banc.

Dec. 13, 1999.

Rehearing Denied Jan. 18, 2000.*

* Justice Kourlis and Justice Martinez would grant the petition.

John S. Gleason, Attorney Regulation Counsel, Kenneth B. Pennywell, Assistant Regulation Counsel, Denver, Colorado, Attorneys for Complainant.

Peter R. Bornstein, Denver, Colorado, Attorney for Attorney-Respondent.

PER CURIAM.

Todd J. Thompson is the respondent in this attorney regulation case. He misappropriated about $15,000 in funds that clients gave to him that he should have turned over to his law firm. A hearing panel of the supreme court grievance committee approved the findings and recommendation of a hearing board that Thompson be suspended for a period of two years, and that the effective date of the suspension should be the date of his immediate suspension, September 25, 1996. The complainant argues that Thompson should be disbarred and should receive no credit for the time he has been on immediate suspension. We conclude that disbarment is warranted, but that the effective date will be made retroactive to the date of his immediate suspension.

I.

Todd J. Thompson was admitted to practice law in Colorado in 1987. We immediately suspended him on September 25, 1996, pending resolution of the present charges. *See* C.R.C.P. 241.8, 7A C.R.S. (1990) (now C.R.C.P. 251.8). The hearing board received the parties' exhibits into evidence, and they listened to the testimony of the complainant's and respondent's witnesses, including Thompson himself and his treating psychiatrist. We summarize their findings below.

From the time he was admitted to the bar until he was fired on September 4, 1996, Thompson was a salaried associate at the law firm of Gerash, Robinson and Miranda, P.C. The firm expected him to develop clients for the firm's benefit. All of the witnesses agreed that the firm's accepted practice was for the lawyer who was responsible for a case to enter into a fee agreement with the client. If the client paid the lawyer directly, he or she was expected to deliver the payment to the person responsible for the firm's finances. No one, whether partner or associate, was permitted to keep the fees, property, or other funds the client turned over to the lawyer. No lawyer was allowed to practice on his or her own, except for occasional pro bono work. Thompson admitted that he was aware of these policies.

Over the years, Thompson developed his own clients. From time to time, clients paid Thompson directly for his services and he placed the checks or cash in a locked drawer of his desk. He kept these funds for his own use, without the knowledge or consent of the law firm. When the partners discovered what Thompson was doing and confronted him, he readily admitted his misconduct. The parties stipulated that Thompson has also cooperated with the disciplinary authorities by self-reporting, by submitting to an interview with investigative counsel, and by joining in the petition for his own immediate suspension.

Although the estimates varied, the hearing board found by clear and convincing evidence that the amount Thompson misappropriated did not exceed $15,000. At the time of the hearing in this case, the district attorney was

investigating Thompson's conduct, but no charges had been filed.

■ The board concluded that by keeping the funds he received from clients, Thompson violated Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). This conduct also violated accepted standards of legal ethics, *see* Colo. RPC 8.4(g), and adversely reflected on Thompson's fitness to practice law, *see* Colo. RPC 8.4(h).[1] Finally, Thompson's failure to deposit unearned fees into a trust account violated Colo. RPC 1.5.

However, with one member dissenting, the hearing board majority declined to find that Thompson violated Colo. RPC 8.4(b) (committing a criminal act that reflects adversely on the lawyer's fitness to practice), as charged in the complaint. Noting that the complaint did not refer to any specific crime or criminal statute Thompson was supposed to have violated, the board assumed that the criminal act that the complaint referred to was theft. "A person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and: (a) Intends to deprive the other person permanently of the use or benefit of the thing of value...." § 18–4–401(1), 6 C.R.S. (1999). Section 18–4–403, 6 C.R.S. (1999), states:

> If any law of this state refers to or mentions larceny, stealing, embezzlement (except embezzlement of public moneys), false pretenses, confidence games, or shoplifting, that law shall be interpreted as if the word "theft" were substituted therefor; and in the enactment of sections 18–4–401 to 18–4–403 it is the intent of the general assembly to define one crime of theft and to incorporate therein such crimes, thereby removing distinctions and technicalities which previously existed in the pleading and proof of such crimes.

The hearing board concluded that the complainant "failed to prove by clear and convincing evidence that [Thompson] intended to permanently deprive his law firm of the use and benefit of the funds he received and held," so they determined that the complainant "failed to prove that [Thompson] committed a criminal act in violation of Rule 8.4(b)." The complainant does not except to this finding. Because of this, and in light of the possibility that criminal charges may still be brought against Thompson, it would be inappropriate for us to address the criminal or noncriminal nature of his conduct any further in this regulation case.

## II.

■ The hearing board's original recommendation was to suspend Thompson for three years, and that the three-year period should commence as of the date of his immediate suspension, September 25, 1996. The hearing panel remanded the case to the board "for reconsideration of its recommendation in light of the court's recent decision in *People v. Bronstein;* [and] for reconsideration of when a suspension, if any, might begin." On reconsideration, the hearing board modified its recommendation to a suspension for two years, but kept the date of Thompson's immediate suspension as the date the suspension should be deemed to have begun. The hearing panel approved the second recommendation. Under this recommendation, Thompson would be eligible to petition for reinstatement immediately. The complainant has objected to both the recommendation of suspension and to the retroactive effective date. The complainant asserts that Thompson should be disbarred, and that the disbarment should be effective as of the date of this opinion.

■ Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), in the absence of mitigat-

---

1. The board did not identify which of Thompson's conduct violated Colo. RPC 8.4(h) that did not also violate Colo. RPC 8.4(c) or 8.4(g). Colo. RPC 8.4(h) provides that "[i]t is professional misconduct for a lawyer to ... engage in *any other* conduct that adversely reflects on the lawyer's fitness to practice law." (Emphasis added.) When a lawyer violates a rule other than 8.4(h), it is not necessary or, in a strict sense, proper to charge a violation of 8.4(h). Any error in this case is harmless, however, because in determining the proper level of discipline, we do not simply add up the number of rules violated, but focus instead on the nature and seriousness of the conduct itself.

ing factors, disbarment is generally appropriate when "a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that adversely reflects on the lawyer's fitness to practice." ABA *Standards* 5.11(b); *see also id.* at 7.1 ("Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal profession."). On the other hand, in the absence of aggravating or mitigating factors, "[s]uspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system." *Id.* at 7.2.

The hearing board found the existence of the following aggravating factors: Thompson had a dishonest or selfish motive at the time of the misconduct, *see id.* at 9.22(b); there were multiple offenses, *see id.* at 9.22(d); and Thompson has substantial experience in the practice of law, *see id.* at 9.22(i).

In mitigation, Thompson has not been disciplined before in twelve years of legal practice, *see id.* at 9.32(a); he was suffering from personal and emotional problems at the time of the misconduct, *see id.* at 9.32(c); he made a timely good faith effort to make restitution to the firm, *see id* at 9.32(d); Thompson cooperated in these regulation proceedings, *see id.* at 9.32(e); several witnesses testified that Thompson had a good character and reputation, *see id.* at 9.32(g); and he has expressed remorse, *see id.* at 9.32(*l* ).

▇▇▇ The record and findings clearly demonstrate that Thompson knowingly misappropriated about $15,000 of funds belonging to his law firm. Unlike section 18–4–401, the criminal statute the board looked at, the intent to permanently deprive another of property is not an element of knowing misappropriation for lawyer discipline purposes. *See People v. Varallo,* 913 P.2d 1, 10 (Colo. 1996). Knowing misappropriation of funds from clients, or one's law firm, almost always results in disbarment. *See id.* at 12; *People v. Guyerson,* 898 P.2d 1062, 1063 (Colo.1995).

In *Guyerson,* 898 P.2d at 1062, the lawyer-respondent submitted fraudulent requests to his law firm for advances for travel and expenses that did not occur. He also made requests for reimbursement of fictitious firm-related expenses. *See id.* Guyerson improperly billed the law firm, and received, $13,-500; in addition, four or five of his clients were billed and paid for these fraudulent expenses. However, we stated that it would not have been significant for disciplinary purposes "[e]ven if [Guyerson] had been entirely successful in stealing only from his law firm and from his partners," since he "did intend to steal from his partners." *Id.* at 1063. We disbarred Guyerson even though, like Thompson, he had no previous discipline. *See id.* at 1063–64.

On the other hand, we suspended the lawyer in *People v. Bronstein,* 964 P.2d 514, 517 (Colo.1998), for a year and a day. Bronstein kept legal fees that he had received from clients that rightfully belonged to his law firm. The amount of fees Bronstein misappropriated was about $12,000. Moreover, the aggravating and mitigating factors that were present in *Bronstein* are similar to the ones in this case, although Bronstein, unlike Thompson, was inexperienced in the practice of law. *See id.* at 516–17. Inexperience in the practice of law is of little or no importance as a mitigating factor when the lawyer's conduct is dishonest. *See id.* at 517. We accepted the recommendation of suspension for a year and a day, although we noted that "at least one member of the court would have imposed a greater sanction." *Id.* Unlike this case, the complainant acquiesced in the recommendation of suspension. Other than the longer period of time in which Thompson's misappropriations took place, we see no principled way to distinguish *Bronstein* from this case. However, we have concluded that *Bronstein* was an unjustified departure from our cases that prescribe disbarment for knowing misappropriation of funds. *See, e.g., People v. Motsenbocker,* 926 P.2d 576, 577 (Colo.1996) (disbarring lawyer who misappropriated bar association funds while serving as treasurer). *Bronstein* is therefore overruled to the extent that it suggests that disbarment is not the presumed sanction when a lawyer knowingly misappropriates funds.

In addition, the mitigating factors in this case are not so extraordinary as to call for a lesser sanction than disbarment. *See Guyerson,* 898 P.2d at 1064. Accordingly, we reject the panel's and board's recommendation of suspension and we order that Thompson be disbarred. However, two members of the court would have approved a three-year suspension because of their view of the impact of mitigating factors.

The remaining question is the effective date of the disbarment. Both the hearing board and panel recommended that the date of Thompson's immediate suspension, September 25, 1996, be the effective date of the sanction imposed in this case. We have rarely approved an effective date that was retroactive to the date of a lawyer's immediate suspension. *See, e.g., In re Corbin,* 973 P.2d 1273, 1276 (Colo.1999) (rejecting recommendation that lawyer's suspension be made retroactive to the date of his immediate suspension). The one exception is when there is a significant period of time between the date of the immediate suspension and our order. *See Varallo,* 913 P.2d at 12 (deciding to make the effective date of disbarment the date of the lawyer's immediate suspension when there were three years between the immediate suspension and order of disbarment). When this opinion is released, Thompson will have been suspended for about three years. Accordingly, we accept the panel's and board's recommendation of retroactive discipline.

### III.

It is hereby ordered that Todd J. Thompson be disbarred, effective September 25, 1996. It is further ordered that Thompson pay the costs of this proceeding in the amount of $$1,404.44, within ninety days after the announcement of this opinion, to the Attorney Regulation Committee, 600 Seventeenth Street, Suite 200 South, Denver, Colorado 80202–5432.

Justice BENDER does not participate.