The **PEOPLE** of the State Of
Colorado, Complainant,

v.

**Kirby D. ROSS,** Respondent.

No. 99PDJ076.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Nov. 14, 2000.

---

Opinion by Presiding Disciplinary Judge ROGER L. KEITHLEY and Hearing Board members, ANNITA M. MENOGAN and LAIRD T. MILBURN, both members of the bar.

### OPINION AND ORDER IMPOSING SANCTIONS

*SANCTION IMPOSED: ATTORNEY DISBARRED*

A sanctions hearing was held on March 13, 2000, before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Annita M. Menogan and Laird T. Milburn. James S. Sudler, Assistant Attorney Regulation Counsel represented the People of the State of Colorado (the "People"). The respondent Kirby D. Ross ("Ross") failed to appear.

On June 6, 1999, the People filed the Complaint in this matter. The Citation and Complaint were served upon Ross on July 23, 1999 by certified mail. Ross failed to answer the allegations in the Complaint and on December 23, 1999, default entered against him. The facts set forth in the Complaint were deemed admitted. Default was granted as to the rule violations set forth in claim I (Colo. RPC 1.4(a)), claim II (Colo. RPC 1.3), claim V (Colo. RPC 8.4(c)), claim VI (Colo. RPC 1.15(b)), claim VII (Colo. RPC 1.16(d)), claim VII(sic) (Colo. RPC 1.3), claim VIII (Colo. RPC 1.4(a)), claim X (Colo. RPC 1.4(a)), claim XI (Colo. RPC 1.15(b)), and claim XII (Colo. RPC 1.16(d)), which were deemed confessed, and denied as to the rule violations set forth in claim III (Colo. RPC 1.1), claim IV (Colo. RPC 1.5(a)), and claim IX (Colo. RPC 1.3).

The People's exhibits 1 and 2 were offered and admitted into evidence. The PDJ and Hearing Board reviewed the facts established by the entry of default and the admitted exhibits, considered argument of the People, and made the following findings of fact which were established by clear and convincing evidence:

## I. FINDINGS OF FACT

Kirby D. Ross has taken and subscribed the oath of admission, was admitted to the bar of the Colorado Supreme Court on October 15, 1992, and is registered upon the official records as attorney registration number 22041. Ross is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

### A. The Bailey Matter

In May 1997, Gary Bailey ("Bailey") retained Ross to prevent the sale of his mother's house by Mr. Ven John ("Ven John") following her death. Ven John claimed title to the house through a quit claim deed allegedly signed by Bailey's mother. Bailey paid Ross $600 for his professional services. On August 12, 1997, Ross filed a document entitled "Notice of Claim that Title to Property is not Clear" in the Arapahoe County Clerk and Recorder's Office. Ven John filed suit against Ross, Bailey and his sister, claiming the document was spurious since no action or *lis pendens* had been filed.

The court ordered the defendants to show cause why the document filed by Ross should not be declared invalid. Ross filed a response to the show cause order claiming that the "notice" had been withdrawn. Ross also filed a Complaint to quiet title on behalf of Bailey. On November 4, 1997, defendants appeared for the show cause hearing and the court released the "notice" and set the matter for a hearing on attorneys' fees. Following the hearing, Ross told Bailey that he would contact him regarding the status of the matter. Bailey never heard from Ross again.

On November 28, 1997, Ven John filed an Answer to the quiet title Complaint alleging that it was frivolous. Thereafter, Ross failed to timely file rule 26 disclosures in the case, failed to set it for trial, and failed to prepare a case management order. On February 3, 1998, the court notified Ross that the case would be dismissed within thirty days unless he accomplished the above three tasks. On March 11, 1998, after receiving no response from Ross, the court dismissed the quiet title action. Ross failed to inform the client that the case had been dismissed.

### B. The Check Center Matter

Beginning in March of 1997, The Check Center referred matters to Ross concerning checks returned for insufficient funds so that Ross could represent The Check Center in litigation. A total of eighty matters were referred to Ross with claims totaling $29,819.14. During April and May 1997, Ross provided The Check Center with status reports regarding the cases. Thereafter, Ross ceased communications with his client and did not return calls from The Check Center's representative. On June 30, 1997, Scott Hopson, one of The Check Center's debtors, made a payment of $351 to Ross to satisfy his debt. Ross did not turn the money over to The Check Center or account for it. After July 1997, Ross failed to take any action on the files.

In February 1998, a representative of The Check Center asked corporate counsel, Paul Mohr, to inquire into Ross's handling of The Check Center files. Mohr wrote letters to Ross on February 17, 1998 and February 26, 1998, requesting return of the files. Ross did not respond or return the files. On April 23, 1998, The Check Center representative wrote to Ross requesting return of the files and received no response.

### C. The Tracy Matter

In October 1995, Michael Tracy's father hired Ross and paid him a $4,000 retainer regarding post conviction matters involving his son, Michael Tracy ("Tracy"). Ross was hired to investigate Tracy's case and file a motion for new trial or for a reduction of Tracy's sentence on a first degree murder conviction. Tracy had previously appealed his conviction and was unsuccessful. Ross agreed to bill against the retainer at $100 per hour. Ross met with Tracy in prison on several occasions. Tracy prepared a Crim. P. 35(c) motion in September 1996 and requested that Ross set it for a hearing. Thereafter, Ross failed to enter his appearance in Tracy's case, failed to file motions, and failed to set the Crim P. 35(c) matter for hearing.

Additionally, although Ross had told Tracy to call collect, when Tracy attempted to do

so, Ross was either unavailable or Tracy's calls were refused. At the outset of the representation Tracy had provided Ross with the trial transcripts and requested that he contact witnesses who had recanted their testimony following the trial. Ross failed to contact the witnesses. Following his termination in 1998, the client requested that Ross return the transcripts and a videotape, and was asked to account for the retainer he had been paid. Ross did not respond. Tracy made numerous attempts to communicate with Ross after June 1998 regarding these matters and Ross did not return his calls. Despite being requested to do so, Ross failed to account for the time he spent on the case or to account for the charges against the retainer he had received.

## II. CONCLUSIONS OF LAW

The People's Complaint charged Ross with thirteen separate claims consisting of violations of Colo. RPC 1.4(a)(failure to communicate)(Bailey, The Check Center and Tracy claims); Colo. RPC 1.3 (neglect)(Bailey and The Check Center claims); Colo. RPC 8.4(c)(conversion) (The Check Center claim); Colo. RPC 1.15(b)(failure to account)(The Check Center and Tracy claims), and Colo. RPC 1.16(d)(failure to return files)(The Check Center and Tracy claims). The People moved to dismiss claim III (Colo. RPC 1.1)(incompetence), claim IV (Colo. RPC 1.5(a))(unreasonable fee) and claim IX (Colo. RPC 1.3)(neglect). The PDJ granted the motion to dismiss without prejudice at the commencement of the hearing.

 Ross exhibited misconduct involving common elements in the three matters giving rise to this disciplinary action. In all three matters, Ross entered into an attorney/client relationship, agreed to provide specific professional services, failed to provide those services, and failed to communicate with his clients regarding their legal difficulties. In all three matters, Ross's failure to communicate with his clients constituted separate violations of Colo. RPC 1.4(a).[1] In both the Bailey and The Check Center matters, Ross's failure to perform the services he was hired to perform constituted serious neglect in violation of Colo. RPC 1.3.[2] In The Check Center and Tracy matters, Ross's failure to render an accounting when requested by the clients violated Colo. RPC 1.15(b).[3] In both The Check Center and Tracy matters, Ross's failure to return the files and other property when the clients requested them constitutes a violation of Colo. RPC 1.16(d).[4]

 Ross's most egregious misconduct, however, was his retention of funds belonging to his client in The Check Center matter. On June 30, 1997, one of the debtors of The Check Center made a payment of $351 to Ross to satisfy a debt. Ross did not, thereafter, account to his client for the payment nor transmit the funds. Misappropriation of a client's funds includes "not only stealing, but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefit therefrom." *People v. Varallo*, 913 P.2d 1, 11 (1996)(*citing In re Wilson*, 81 N.J. 451, 455 n. 1, 409 A.2d 1153 (1979)). Notwithstanding his client's extensive efforts to obtain information about the cases Ross was handling and to recover the case files, Ross retained his client's prop-

1. Colo. RPC 1.4(a) provides: A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

2. Colo. RPC 1.3 provides: A lawyer shall act with reasonable diligence and promptness in representing a client. A lawyer shall not neglect a legal matter entrusted to that lawyer.

3. Colo. RPC 1.15(b) provides: Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall, promptly or otherwise as permitted by law or by agreement with the client, deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, render a full accounting regarding such property.

4. Colo. RPC 1.16(d) provides: Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by law.

erty and funds for an extended period of time without explanation or justification contrary to the mandatory obligations contained within The Colorado Rules of Professional Conduct. Ross's failure to account or tender the funds he accepted on behalf of his client for an extended period of time, taken together with the client's demands and his complete lack of communication with the client, establishes that his conduct was willful and knowing. Ross's failure to turn over the funds belonging to the client constitutes knowing conversion, in violation of Colo. RPC 8.4(c).[5] *See People v. Hotle*, 35 P.3d 185, 189 (Colo. PDJ 1999), 29 COLO. LAW. 107, (January, 2000) (*citing People v. Singer*, 897 P.2d 798, 801 (Colo.1995)(extensive and prolonged neglect is considered willful misconduct)).

### III. SANCTIONS/IMPOSITION OF DISCIPLINE

The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") is the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* 4.11 provides that disbarment is generally appropriate when:

[A] lawyer knowingly converts client property and causes injury or potential injury to a client.

Conversion of client funds causes injury to the client. *See Hotle*, 35 P.3d 185, 190, 29 Colo. Law. at 108. Ross's conversion of the funds belonging to The Check Center warrants disbarment pursuant to ABA *Standard* 4.11 and Colorado case law. *See In re Cleland*, 2 P.3d 700, 706 (Colo.2000)(disbarring attorney for misappropriation of funds); *Varallo*, 913 P.2d at 11; *People v. Elliott*, No. 99PDJ059 (consolidated with 99PDJ086) slip op. at 8 (Colo. PDJ March 1, 2000); 29 Colo. Law. 112, 113 (May 2000) (attorney disbarred for abandoning his clients and conversion of clients' funds); *Hotle*, 35 P.3d 185, 191, 29 Colo. Law. at 108; *People v. Righter*, 35 P.3d 159, 163 (Colo. PDJ 1999), 28 COLO. LAW. 140, 141 (September, 1999)(attorney disbarred

for, among other things, serious neglect of clients and conversion of client funds).

ABA *Standard* 4.41 further provides that disbarment is generally appropriate when:

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

In all three matters, Ross knowingly failed to communicate with his clients in the course of his professional representation. In the Bailey and The Check Center matters, his conduct constituted serious neglect. In the Bailey matter, Ross's failure to file timely disclosures, prepare a trial management order and set the case for trial resulted in Bailey's quiet title action being dismissed. In The Check Center matter, Ross failed to take any action on the collection cases in his possession from July 1997 onward. Ross's clients were put at substantial disadvantage and exposed to potentially serious injury as a result of Ross's misconduct. *See In re Cleland*, 2 P.3d 700, 705 (Colo.2000)(disbarring attorney for misappropriation of funds and holding that although the attorney's clients may not have suffered significant actual damages, the potential for injury was nevertheless substantial). Ross's failing to return the files and other property in The Check Center and Tracy matters resulted in potentially serious harm to the clients.

Ross did not participate in these proceedings and did not appear at the hearing; therefore, the PDJ and Hearing Board did not have the benefit of Ross's presentation of factors which might mitigate the sanction.

The PDJ and Hearing Board considered factors in aggravation pursuant to ABA *Standards* 9.22. Ross had two instances of prior misconduct: he received two letters of admonition close in time to the misconduct giving rise to this Complaint. In 1997, Ross

---

5. Colo. RPC 8.4 provides: It is professional misconduct for a lawyer to: (c) engage in conduct

involving dishonesty, fraud, deceit or misrepresentation.

violated Colo. RPC 1.4(a) by failing to communicate with the client for a five-month period concerning the filing of an appeal on behalf of the client. In 1998, Ross violated Colo. RPC 1.3, Colo. RPC 1.4(a) and Colo. RPC 1.16(d) by failing to take meaningful action on a personal injury claim on behalf of the client for a fifteen-month period and failing to keep the client advised of the status of the case. Further, Ross failed to return the file to the client despite repeatedly being asked to do so. This misconduct is strikingly similar to the conduct giving rise to this Complaint.

Ross demonstrated a dishonest motive, knowing conversion of client funds, *id.* at 9.22(b); he engaged in a pattern of misconduct, *id.* at 9.22(c); committed multiple offenses, *id.* at 9.22(d); engaged in bad faith obstruction of the disciplinary proceeding by failing to comply with the rules of the disciplinary process, *id.* at 9.22(e); failed to acknowledge the wrongful nature of his misconduct, *id.* at 9.22(g), and Ross demonstrated indifference to making restitution, *id.* at 9.22(j).

Ross's conduct amounts to serious neglect of his three clients, and the knowing conversion of funds belonging to one client. Knowing conversion alone warrants disbarment. *See In the Matter of Todd J. Thompson,* 991 P.2d 820, 824 (Colo.1999); *Varallo,* 913 P.2d at 12. Taken together with the serious neglect evident in the Bailey case and the failure to communicate and failure to account in the Tracy case, disbarment is required.

### IV. ORDER

It is therefore ORDERED:

1. KIRBY D. ROSS, registration number 22041 is DISBARRED from the practice of law effective thirty-one days from the date of this Order.

2. Ross is Ordered to pay the costs of these proceedings; the People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.

3. As a condition of readmission, Ross must account to Tracy within twelve months from the date of this Order for the time he spent on Michael Tracy's case and refund any unearned fees.

4. As a condition of readmission, Ross must repay The Check Center $351 plus interest from June 30, 1997 at the statutory rate within twelve months from the date of this Order.

5. Within 90 days of the date of this Order, Ross shall return to the respective clients all files in his possession, custody or control regarding the Tracy or The Check Center matters.