**The PEOPLE of the State of Colorado, Complainant,**

v.

**Patrick Dennis BEASLEY, Respondent.**

**No. 10PDJ004.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

July 23, 2010.

Attorney Regulation. Following a Sanctions Hearing, the Presiding Disciplinary Judge suspended Patrick Dennis Beasley (Attorney Registration No. 25637) from the practice of law for a period of one year and one day, effective August 23, 2010. Respondent failed to represent his clients with reasonable diligence and promptness, neglected to reasonably inform his clients and to respond to their requests for information, commingled his clients' property with his own, inadequately supervised an assistant, and untruthfully responded to interrogatories. He also failed to present mitigating evidence or otherwise participate in these proceedings. His misconduct admitted by default constituted grounds for the imposition of discipline pursuant to C.R.C.P. 251.5, and violated Colo. RPC 1.3, 1.4(a)(3), 1.15(a), 5.3(b), and 8.4(c).

## DECISION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

On June 10, 2010, the Presiding Disciplinary Judge ("the Court") held a Sanctions Hearing pursuant to C.R.C.P. 251.15(b). James C. Coyle appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Patrick Dennis Beasley ("Respondent") did not appear, nor did counsel appear on his behalf. The Court now issues the following "Decision and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

### I. ISSUE AND SANCTION

Respondent failed to represent his clients with reasonable diligence and promptness, neglected to reasonably inform his clients and to respond to their requests for information, commingled his clients' property with his own, inadequately supervised an assistant, and untruthfully responded to interrogatories. Respondent's conduct was negligent in some instances and knowing in others, causing his clients injury or potential injury. Suspension is generally appropriate in such circumstances.

After considering the nature of Respondent's misconduct and its consequences, the significant aggravating factors, and the minimal evidence of countervailing mitigators due in part to Respondent's failure to participate in these proceedings, the Court finds the appropriate sanction for Respondent's misconduct is suspension for one year and one day. In addition, as a condition precedent to any petition for reinstatement pursuant to C.R.C.P. 251.29(c), the Court orders Respondent to undergo an independent medical examination ("IME") and to pay restitution to his clients.

### II. PROCEDURAL HISTORY

On January 4, 2010, the People filed a complaint alleging that Respondent violated several rules of professional conduct. Respondent failed to answer the complaint, and the Court granted a motion for default on March 31, 2010. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1]

### III. ESTABLISHED FACTS AND RULE VIOLATIONS

The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted complaint.[2] Respondent took and subscribed the Oath of Admission and gained admission to the Bar of the Colorado Supreme Court on June 8,

---

1. *See People v. Richards,* 748 P.2d 341, 346 (Colo. 1987); C.R.C.P. 251.15(b).

2. *See* the People's complaint in 10PDJ004 for further detailed findings of fact.

1995. He is registered upon the official records, Attorney Registration No. 25637, and is therefore subject to the jurisdiction of the Court pursuant to C.R.C.P. 251.1.

In April 2008, Patrick Kennedy ("Mr. Kennedy") and Guadalupe Rodriguez n/k/a Guadalupe Kennedy ("Mrs. Kennedy") met with Respondent to inquire about applying for residency for Mrs. Kennedy. Mr. and Mrs. Kennedy informed Respondent that they planned to marry on May 2, 2008, and that they wished to begin the application process after their marriage.

On May 8, 2008, Mr. and Mrs. Kennedy signed a Legal Services Contract with Respondent's office, which provided for a flat fee of $2,350.00 for obtaining an I–130 Petition for Alien Relative. The contract required an advance retainer of $1,500.00 but stated that the retainer would become property of the lawyer upon receipt; that the lawyer would not be required to place the retainer in an Interest on Lawyers Trust Accounts ("IOLTA") escrow or similar segregated account; and that the law office could treat the retainer as income upon receipt.

Mr. and Mrs. Kennedy paid Respondent the $1,500.00 retainer on May 8, 2008, and Respondent placed that retainer into his office account, rather than placing the retainer into a separate account. Respondent did not have a trust account until March 2009, and Respondent's practice was to place client retainers that he received as flat fees into his office account. As of May 8, 2008, Respondent had performed no more than three hours of work on Mr. and Mrs. Kennedy's behalf.

On May 30, 2008, Respondent filed a Notice of Entry of Appearance as Attorney or Representative with the U.S. Department of Justice Immigration and Naturalization Service. At this time, several immigration application and petition forms were prepared on Mr. and Mrs. Kennedy's behalf.

On or about August 8, 2008, Mr. Kennedy received a rejection notice from the U.S. Bureau of Citizenship and Immigration Services, which stated that the priority date did not appear to be current. When Mr. Kennedy contacted Respondent's office, a legal assistant told Mr. Kennedy that this was nothing to worry about and that they "just had to write a letter and send it back to Immigration."

Mr. Kennedy began to call Respondent's office approximately once every two weeks. During those calls, Mr. Kennedy spoke with Respondent's legal assistant, requesting that Respondent return his calls. Although the assistant consistently gave those messages to Respondent, Respondent did not return Mr. Kennedy's calls.

On November 11, 2008, Mr. Kennedy called Respondent's office and spoke with a new legal assistant. That assistant informed Mr. Kennedy that Respondent's law office had never sent his application package back to the immigration office. The assistant apologized and told Mr. Kennedy he would inform Respondent of the problem. The next day, Mr. and Mrs. Kennedy went to Respondent's office for an appointment but Respondent did not appear. When the assistant reached Respondent by telephone, Respondent agreed to try to streamline the immigration process and agreed to call Mr. Kennedy the next morning. During the call on November 13, 2008, Mr. Kennedy told Respondent that Mrs. Kennedy had a job offer pending approval of her immigration status by January 1, 2009, and that there was a deadline of December 31, 2008, for his wife to be placed on his health insurance.

On or about November 17, 2008, Respondent filed a request for expedited processing and filed several petition and application forms with the immigration office. In the request for expedited processing, Respondent admitted that he had failed to supervise his first legal assistant. Respondent further stated that he was unaware that the immigration office had returned the application package and that his assistant had not resubmitted the package. Respondent admitted that his office had not worked on Mr. and Mrs. Kennedy's file for an approximately three-month period. Respondent also admitted that this delay was ultimately his fault and that his clients had "zealously pursued communicating with [his] office regarding the completion of their case, to no avail." Respondent requested that the immigration of-

fice process the application with all due haste.

In December 2008, the immigration office notified Mr. Kennedy that they had received his application. Thereafter, Mr. Kennedy called Respondent and discovered that his telephone number was disconnected. Mr. Kennedy also went to Respondent's office unannounced, whereupon Respondent told Mr. Kennedy that the office telephones were having problems. Respondent gave Mr. Kennedy his cell phone number, but after answering one call from Mr. Kennedy on that phone, Respondent never again responded to Mr. Kennedy's calls to his cell phone. Around the end of December 2008, Respondent's office telephone number was once again disconnected. On or about January 6, 2009, Mr. Kennedy again called Respondent's office. However, Respondent never returned Mr. Kennedy's calls after December 2008.

Mr. and Mrs. Kennedy completed the immigration process without Respondent's assistance, and Mrs. Kennedy's immigration status was approved. Due to Respondent's failure to timely handle this matter, Mrs. Kennedy could not obtain medical coverage through Mr. Kennedy's insurance plan and she lost her contingent job offer.

Mr. and Mrs. Kennedy filed a small-claims action against Respondent, which went to trial on May 7, 2009. The court ordered Respondent to pay Mr. Kennedy $1,092.00. Respondent has not paid that sum. On May 7, 2009, the small-claims court ordered Respondent to answer interrogatories within ten days of service. When Respondent answered the interrogatories on May 29, 2009, he provided fabricated Wells Fargo bank account numbers. Mr. Kennedy confirmed that the account numbers were invalid by calling Wells Fargo, which stated that the numbers Respondent provided did not match their accounts. Respondent's provision of fabricated account numbers has prevented Mr. and Mrs. Kennedy from collecting on their judgment.

Through his conduct, Respondent violated several rules of professional conduct. First, Respondent violated Colo. RPC 1.3, which

requires lawyers to act with reasonable diligence and promptness in representing a client. Respondent violated this rule by neglecting to timely re-file Mr. and Mrs. Kennedy's immigration application and by failing to complete the work Mr. and Mrs. Kennedy retained him to perform. Second, Respondent violated Colo. RPC 1.4(a)(3), which directs lawyers to keep their clients reasonably informed about the status of a matter and to promptly comply with reasonable requests for information. Respondent violated Colo. RPC 1.4(a)(3) by failing to adequately communicate with Mr. and Mrs. Kennedy and by failing to respond to Mr. Kennedy's reasonable requests for information. Third, Respondent violated Colo. RPC 1.15(a), which provides that lawyers shall hold any property of a client that is in the lawyer's possession separate from the lawyer's own property. Respondent exercised unauthorized dominion or ownership over Mr. and Mrs. Kennedy's funds by placing their retainer into his office account when he had performed no more than three hours of work on their behalf. Fourth, Respondent violated Colo. RPC 5.3(b), which requires lawyers to adequately supervise non-lawyer assistants to ensure those assistants' conduct comports with the lawyer's professional obligations. Respondent violated this rule by failing to adequately supervise his first legal assistant, including his failure to verify what work the assistant was performing on Mr. and Mrs. Kennedy's matter. Fifth, Respondent violated Colo. RPC 8.4(c), which prohibits lawyers from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. Respondent engaged in conduct prohibited by Colo. RPC 8.4(c) by knowingly, or at least recklessly, submitting fabricated bank account numbers in response to interrogatories.

## IV. *SANCTIONS*

 The ABA Standards for Imposing Lawyer Sanctions ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct.[3] In selecting a sanction after a finding of lawyer misconduct, the Court must consider the

---

3. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

duty violated; the lawyer's mental state; the actual or potential injury caused by the lawyer's misconduct; and the existence of aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

## ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* The order of default establishes that Respondent violated a duty to his clients, which arises out of the nature of the basic relationship between the lawyer and the client.[4] Specifically, Respondent failed to act with diligence and promptness; failed to keep his clients informed or respond to their requests for information; commingled his clients' property with his own; and engaged in dishonest conduct to his clients' detriment. In addition, Respondent violated his duties to the legal system by submitting untruthful answers to interrogatories.

*Mental State:* Respondent's first legal assistant failed to inform Respondent that the immigration office had returned the application package. However, Respondent would have known of the lack of diligence and promptness with which his office was handling Mr. and Mrs. Kennedy's matter if Respondent had adequately supervised his assistant. Therefore, Respondent should have known of these issues.[5] Next, the complaint, as adopted by the order of default, explicitly establishes that Respondent knew or should have known that he had failed to communicate adequately with Mr. Kennedy over a period of many months. With respect to the third claim, the complaint establishes that Respondent committed a negligent, or technical, conversion of his clients' funds by failing to place those funds into a trust account. The evidence also shows that Respondent was at least negligent in supervising his assistant. Finally, the complaint expressly establishes that either Respondent knew his response to the small-claims court interrogatories was untrue or he was reckless in failing to determine whether his response was true before making that response.

*Injury:* Respondent's misconduct caused injury to Mr. and Mrs. Kennedy. The complaint, as adopted by the order of default, explicitly establishes that Respondent's violation of Rules of Professional Conduct 1.3 [diligence and promptness], 1.4(a)(3) [keeping clients informed], and 5.3(b) [supervision of assistants] caused injury or potential injury to Mr. and Mrs. Kennedy. As noted above, Respondent's actions and omissions led to the retraction of Mrs. Kennedy's job offer and prevented Mrs. Kennedy from obtaining medical insurance through her husband's insurance plan. Further, the facts demonstrate that Respondent's provision of fabricated bank account numbers injured his clients by preventing them from collecting upon their judgment.

## ABA *Standard* 3.0—Aggravating & Mitigating Factors

Aggravating circumstances include any considerations or factors that may justify an increase in the degree of discipline to be imposed.[6] Mitigating circumstances include any considerations or factors that may justify a reduction in the degree of discipline to be imposed.[7]

*Dishonest or Selfish Conduct—9.22(b):* Respondent exercised unauthorized dominion and control over funds belonging to his clients without rendering services of commensurate value in exchange. Further, Respondent provided fabricated bank account numbers with the selfish motive of preventing Mr. and Mrs. Kennedy from collecting on their judgment against him. The Court concludes Respondent engaged in dishonest and selfish conduct.

*Multiple Offenses—9.22(d):* Respondent violated five of the Rules of Professional Conduct over the course of an approximately twelve-month period.

**4.** *See* ABA *Standard* 4.0.

**5.** *See* ABA *Standards, Definitions.* "Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

**6.** *See* ABA *Standard* 9.21.

**7.** *See* ABA *Standard* 9.31.

*Vulnerability of the Victim—9.22(h):* Immigration clients may be particularly vulnerable. For example, a person who does not speak English as a first language or who is unfamiliar with the legal system in the United States may have heightened susceptibility to professional misconduct by an attorney. In this case, the People did not establish that Mrs. Kennedy was particularly vulnerable, so the Court accords this factor minimal weight.

■ *Substantial Experience in the Practice of Law—9.22(i):* Respondent was admitted to the bar in 1995. Therefore, he had at least twelve years of experience in practicing law by the time of his first violation of the Rules of Professional Conduct. Twelve years of practice qualifies as substantial experience in the practice of law.[8]

*Absence of Prior Disciplinary Record— 9.32(a):* Respondent does not have a prior disciplinary record.

*Personal or Emotional Problems—9.32(c):* At the sanctions hearing, the People conceded that Respondent is known to have taken medications in 2008 that may be used to treat psychological problems such as depression, schizophrenia, and insomnia. In addition, the People admitted that Respondent has struggled with depression. However, as Respondent did not participate in the sanctions hearing, Respondent presented no evidence to support these arguments. Accordingly, the Court accords Respondent's emotional problems reduced weight as a mitigating factor.

### Analysis Under ABA *Standards* and Colorado Case Law

■ As noted above, the order of default established that Respondent violated Colo. RPC 1.3, 1.4(a)(3), 1.15(a), 5.3(b), and 8.4(c). In light of that order, several ABA *Standards* establishing suspension as the pre-

sumptive sanction are applicable. Those ABA *Standards* provide that suspension is generally appropriate where:

(a) a lawyer causes injury or potential injury to a client by knowingly failing to perform services for a client or engaging in a pattern of neglect;[9]

(b) a lawyer knowingly deceives a client, and causes injury or potential injury to the client;[10] or

(c) a lawyer knows that false statements are being submitted to the court, takes no remedial action, and causes injury or potential injury to a party to the proceeding.[11]

The ABA *Standards* establish that reprimand is generally the appropriate sanction when a lawyer is negligent in dealing with client property and causes the client injury or potential injury,[12] as well as in most cases of a violation of a duty owed as a professional, such as the duty to properly supervise an assistant.[13]

The ABA *Standards* further provide that, in cases involving multiple charges of misconduct, "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct."[14]

Colorado Supreme Court case law applying the ABA *Standards* also holds that suspension is appropriate in cases similar to this one. *People v. Fager* provides an appropriate basis for comparison.[15] In that case, the attorney failed to obey discovery requirements in the course of representing a client, which apparently caused the court to bar the client's witnesses from testifying, and which may have contributed to the court's decision to award custody of the client's children to the client's ex-wife.[16] The attorney also

8. *See In re Thompson,* 991 P.2d 820, 823 (Colo. 1999).

9. *See* ABA *Standard* 4.4.

10. *See* ABA *Standard* 4.6.

11. *See* ABA *Standard* 6.1.

12. *See* ABA *Standard* 4.13.

13. *See* ABA *Standard* 7.3.

14. *See* ABA *Standards* § II at 7.

15. 925 P.2d 280 (Colo.1996).

16. *Id.* at 281–82.

failed to account for or return funds his client paid to him for legal services.[17] In representing another client, the attorney neglected the matter, failed to keep funds in a separate account, failed to return client property upon request, and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation.[18] The Colorado Supreme Court determined that suspension for a year and a day was appropriate, despite some concerns that the period was too short.[19]

The circumstances presented here are not egregious enough to warrant a longer period of suspension. In contrast, circumstances meriting a three-year suspension were present in *People v. Denton*, where the respondent failed to file a civil action on behalf of his client, failed to return the client's retainer, and refused to return supporting documentation that was critical to that action, thereby depriving the client of the right to pursue his civil claim.[20] The respondent's steadfast refusal to honor his obligations in that case represented an intentional disregard for the client's interests that is not present here.[21]

■ Significant mitigating factors may overcome the presumption of suspension,[22] but the few at work in this case do not justify a reduction in the sanction imposed.[23] Indeed, because the Court has no reliable evidence that Respondent has, in fact, suffered from the emotional problems discussed above, this mitigating factor does not justify a variance from the presumed sanction. Further, Respondent's failure to participate in these proceedings leaves the Court with little else to consider in terms of mitigation. Meanwhile, the Court is significantly influ-

enced by Respondent's multiple offenses and the dishonest nature of his conduct.

## V. CONCLUSION

Respondent's failure to comply with numerous rules and his dishonesty towards his clients and the judicial system is troubling to the Court. Respondent appears to have abdicated responsibility for his clients' welfare in this case, resulting in serious consequences for his clients. In addition, the Court is concerned that Respondent has not participated in any phase of the disciplinary proceedings. The Court hopes that Respondent will use his period of suspension to seek treatment for any emotional problems that may have contributed to the misconduct discussed here. In light of the unsettling nature of Respondent's conduct and the need to protect the public from future instances of such conduct, the Court concludes Respondent should be suspended from the practice of law for one year and one day.

## VI. ORDER

The Court therefore **ORDERS:**

1. Patrick Dennis Beasley, Attorney Registration No. 25637, is hereby **SUSPENDED** from the practice of law for a period of **ONE YEAR AND ONE DAY.** The suspension **SHALL** become effective thirty-one (31) days from the date of this order in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).

2. As a condition precedent to any petition for reinstatement pursuant to C.R.C.P. 251.29(c), Respondent **SHALL** submit to an IME by a qualified doctor agreeable to the People.

---

17. *Id.* at 282.

18. *Id.*

19. *Id.* at 283. Another instructive case is *People v. Regan*, 831 P.2d 893, 896–97 (Colo.1992), where the court concluded suspension for a year and a day was the appropriate sanction for an attorney who had engaged in a pattern of neglect and misrepresentation, but where several mitigating factors were established.

20. 839 P.2d 6, 8 (Colo.1992).

21. *See id.*

22. *See People v. Waitkus*, 962 P.2d 977 (Colo. 1998) (significant mitigating factors may overcome presumption of suspension).

23. *Cf. People v. Guyerson*, 898 P.2d 1062, 1064 (Colo.1995) (concluding presence of substantial personal and emotional problems, cooperation with the hearing board, presence of remorse, and evidence of respondent's good character insufficient to overcome presumption of disbarment for conversion).

Respondent, not the People, shall be responsible for the cost of the IME. Once a qualified expert is chosen, it is Respondent's duty to advise the Court so that an appropriate order may be drafted and presented to the doctor as to what issues to address in a report to the Court. The doctor shall have access to all records in the People's possession, as well as this opinion, before meeting with Respondent for the scheduled IME.

3. Respondent **SHALL** pay restitution of $1,092.00 plus interest dating from May 7, 2009, to Mr. and Mrs. Kennedy or, in the alternative, reimburse the Colorado Attorney's Fund for Client Protection for all proceeds that may have been paid to these named clients.

4. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days of the date of this order. Respondent shall have ten (10) days within which to respond.