The **PEOPLE** of the State of Colorado, Complainant

v.

Ronald Lawrence **ROBERTS**, Respondent.

No. 10PDJ017.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 26, 2010.

Attorney Regulation. Following a Sanctions Hearing, the Presiding Disciplinary Judge disbarred Ronald Lawrence Roberts (Attorney Registration No. 21459) from the practice of law, effective September 26, 2010. Respondent knowingly failed to return an arbitration fee to clients he had agreed to represent in arbitration after failing to perform services during that representation. In addition, Respondent failed to communicate with the clients and failed to return documents relevant to their case. He also failed to present mitigating evidence or otherwise participate in these proceedings. His misconduct admitted by default constituted grounds for the imposition of discipline pursuant to C.R.C.P. 251.5, and violated Colo. RPC 1.3, 1.4(a), 8.4(c), and 1.16(d).

### DECISION AND ORDER IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

On August 23, 2010, the Presiding Disciplinary Judge ("the Court") held a Sanctions Hearing pursuant to C.R.C.P. 251.15(b). April M. McMurrey appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). Ronald Lawrence Roberts ("Respondent") did not appear, nor did counsel appear on his behalf. The Court now issues the following "Decision and Order Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

### I. ISSUE AND SANCTION

Disbarment is generally the appropriate sanction when a lawyer knowingly converts or misappropriates client funds, unless significant factors mitigate that conduct. Respondent knowingly failed to return an arbitration fee to clients he had agreed to represent in arbitration after failing to perform services during that representation. In addition, Respondent failed to communicate with the clients and failed to return documents relevant to their case. What is the appropriate sanction for Respondent?

Respondent has not participated in the disciplinary proceedings brought against him, and the Court is unaware of any factors that mitigate his conduct. After considering the nature of Respondent's misconduct and its consequences, the aggravating factors, and the absence of countervailing mitigating factors, the Court finds the appropriate sanction for his misconduct is disbarment.

### II. PROCEDURAL HISTORY

On February 11, 2010, the People filed a complaint alleging that Respondent had violated several Rules of Professional Conduct. Respondent failed to answer the complaint, and the Court granted a motion for default on May 25, 2010. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1]

### III. ESTABLISHED FACTS AND RULE VIOLATIONS

The Court hereby adopts and incorporates by reference the factual background of this case fully detailed in the admitted complaint. Respondent took and subscribed

---

1. *See People v. Richards*, 748 P.2d 341, 346 (Colo. 1987); C.R.C.P. 251.15(b).

the Oath of Admission and gained admission to the Bar of the Colorado Supreme Court on May 1, 1992. He is registered upon the official records, Attorney Registration No. 21459, and is therefore subject to the jurisdiction of the Court pursuant to C.R.C.P. 251.1.

Billy and Carlyn Sieck hired Respondent in 2008 to represent their company, Sieck Contracting, Inc., in litigation against Divide Metro District. The Siecks' contract with Divide Metro District required the case to be handled through mediation or arbitration. Respondent represented the Siecks in mediation in October 2008, but the effort was unsuccessful.

Respondent then agreed to represent the Siecks in arbitration. According to the American Arbitration Association's ("AAA") fee schedule, the fee for the Siecks' arbitration would be $4,000.00. That amount did not include Respondent's fee for representing the Siecks in arbitration. The Siecks gave Respondent a check for $4,000.00 on December 31, 2008, for the purpose of paying the arbitration costs. Respondent cashed the check, but did not provide any portion of the funds to AAA and did not represent the Siecks in arbitration.

The Siecks attempted to contact Respondent between February 2009 and April 2009 to inquire about the status of their arbitration. Mr. Sieck testified at the sanctions hearing that these efforts included about two or three phone calls per week for a period of about four months, between six and ten emails, numerous visits to Respondent's home, and inquiries through acquaintances of Respondent. Respondent never responded or contacted the Siecks. After contacting AAA, the Siecks learned that arbitration had not been scheduled in their case. In a certified letter dated April 16, 2009, the Siecks requested that Respondent return their $4,000.00 and their file. Respondent never did so. The Siecks were then forced to hire another attorney to represent them in arbitration.

In his representation of the Siecks, Respondent violated several Rules of Professional Conduct. As set forth in the first claim in the People's complaint, Respondent violated Colo. RPC 1.3, which requires lawyers to represent clients with reasonable diligence and promptness, by failing to set the Siecks' matter for arbitration and by failing to take any other action on the Siecks' case. Second, Respondent violated Colo. RPC 1.4(a) by neglecting to respond to the Siecks' requests for information and by ceasing all communications with them. Third, Respondent violated Colo. RPC 8.4(c), which prohibits lawyers from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. By failing to return the Siecks' $4,000.00 when he had not scheduled arbitration and lacked authorization to keep those funds, Respondent knowingly converted or misappropriated client funds. Finally, Respondent violated Colo. RPC 1.16(d) by failing to return the Siecks' file or arbitration fee when Respondent's non-communication and neglect of the Siecks' matter had effectively terminated the attorney-client relationship.

## IV. SANCTIONS

The ABA Standards for Imposing Lawyer Sanctions ("ABA *Standards*") and Colorado Supreme Court case law are the guiding authorities for selecting and imposing sanctions for lawyer misconduct.[2] In selecting a sanction after a finding of lawyer misconduct, the Court must consider the duty violated; the lawyer's mental state; the actual or potential injury caused by the lawyer's misconduct; and the existence of aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* The complaint, as referenced by the order of default, establishes that Respondent violated a duty to his clients by failing to diligently represent them, failing to communicate with them, and converting or misappropriating their funds.[3] Respondent also

---

**2.** *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

**3.** *See* ABA *Standard* 4.0.

violated the duties he owed as a professional by failing to return client funds and files upon termination of the representation.[4]

*Mental State:* With respect to Respondent's lack of diligent representation and lack of communication pursuant to Colo. RPC 1.3 and 1.4(a), the complaint establishes that Respondent knew or should have known that he was not fulfilling his professional responsibilities. With respect to Colo. RPC 8.4(c), the complaint explicitly establishes that Respondent knowingly converted or misappropriated the funds. The evidence also establishes that Respondent knew or should have known that he had improperly failed to return his clients' funds and their file upon termination of the representation, as required by Colo. RPC 1.16(d).

*Injury:* Respondent's misconduct caused injury to his clients. Respondent deprived the Siecks of funds and legal documents belonging to them. Mr. Sieck testified at the sanctions hearing that the Siecks had to pay a second lawyer $5,000.00 to represent them in arbitration after Respondent failed to perform services in their matter. Respondent's misconduct also significantly delayed resolution of the Siecks' case.

### ABA *Standard* 3.0—Aggravating & Mitigating Factors

Aggravating circumstances include any considerations or factors that may justify an increase in the degree of discipline to be imposed.[5] Mitigating circumstances include any considerations or factors that may justify a reduction in the degree of discipline to be imposed.[6] In this case, Respondent has not participated in the disciplinary proceedings, and the Court is aware of no mitigating circumstances. The Court considered evidence of the following aggravating circumstances in deciding the appropriate sanction.

*Prior Disciplinary Offenses—9.22(a):* Respondent was suspended from the practice of law for one year and one day on October 27, 2009, pursuant to a conditional admission of misconduct. The conditional admission stated that Respondent had failed to represent numerous clients with reasonable diligence, failed to communicate with clients, failed to withdraw from client matters, and violated court orders.

*Multiple Offenses—9.22(d):* Respondent violated four distinct Rules of Professional Conduct in the matter addressed here.

*Substantial Experience in the Practice of Law—9.22(i):* Respondent was admitted to the bar in 1992, so he has considerable experience practicing law.

*Indifference to Making Restitution—9.22(j):* Respondent has not returned the Siecks' funds.

### Analysis Under ABA *Standards* and Colorado Case Law

As noted above, the order of default establishes that Respondent violated Colo. RPC 1.3, 1.4(a), 8.4(c), and 1.16(d).

ABA *Standard* 4.42 applies to Respondent's violation of Colo. RPC 1.3 and 1.4(a). That standard provides that suspension is generally appropriate when a lawyer knowingly fails to perform services for a client and causes the client injury or potential injury or when a lawyer engages in a pattern of neglect and causes the client injury or potential injury. With respect to Respondent's conversion or misappropriation in violation of Colo. RPC 8.4(c), ABA *Standard* 4.11 provides that disbarment is generally appropriate when a lawyer knowingly converts client property and thereby causes injury or potential injury.[7] In regard to Respondent's violation of Colo. RPC 1.16(d), ABA *Standard* 7.2 provides that suspension is usually appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes the client injury or potential injury.

---

4. *See* ABA *Standard* 7.0.

5. *See* ABA *Standard* 9.21.

6. *See* ABA *Standard* 9.31.

7. Although Appendix 1 of the ABA *Standards* indicates that the standards applicable to violations of Colo. RPC 8.4(c) are *Standards* 4.6 and 5.1, the Court determines that ABA *Standard* 4.1 is more relevant to this type of violation of Colo. RPC 8.4(c), because that standard specifically addresses conversion.

The ABA *Standards* further provide that, in cases involving multiple charges of misconduct, "[t]he ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a number of violations; it might well be and generally should be greater than the sanction for the most serious misconduct." [8]

In examining the applicable case law, the Court focuses on cases relating to the most serious misconduct at issue here, namely Respondent's conversion of client funds. The Colorado Supreme Court has held that, except where significant mitigating factors apply, disbarment is the appropriate sanction for knowing misappropriation of client funds in violation of Colo. RPC 8.4(c). [9] In fact, the Colorado Supreme Court characterized this presumption as "virtually automatic." [10]

The Court notes that the rule of presumptive disbarment for knowing conversion was developed in the context of cases involving extremely serious misconduct. For instance, in *People v. Dice*, the lawyer stipulated to disbarment after knowingly misappropriating over $50,000.00 in funds belonging to an estate he was representing and then lying about those actions. [11] In addition, the lawyer violated a probate court order by using estate proceeds to purchase artwork for his own benefit, recklessly misappropriated several other clients' funds, and failed to keep

clients informed about the status of several matters. [12]

Although Respondent's misconduct here is not as egregious as that in some other cases in which lawyers have been disbarred for knowing conversion, the Court determines that disbarment is the appropriate sanction. As in at least two other cases in which lawyers were disbarred for failing to return client funds, the complaint establishes that Respondent's conversion was coupled with a patent abandonment of his professional responsibilities to the Siecks. [13] Moreover, Respondent's misconduct occurred over a period of many months, and Respondent failed to respond to the Siecks' remarkably assiduous efforts to communicate with Respondent.

In circumstances such as these, Colorado case law establishes that the Court has little discretion to deviate from the presumptive sanction of disbarment. For instance, in *In re Thompson*, the Colorado Supreme Court overruled a prior decision in which it had suspended a lawyer who misappropriated funds. [14] The *Thompson* court held that the earlier decision, *People v. Bronstein*, [15] was "an unjustified departure from our cases that prescribe disbarment for knowing misappropriation of funds. *Bronstein* is therefore overruled to the extent that it suggests that disbarment is not the presumed sanction

**8.** *See* ABA *Standards* § II at 7.

**9.** *In re Haines*, 177 P.3d 1239, 1250 (Colo.2008).

**10.** *People v. Lefly*, 902 P.2d 361, 364 (Colo.1995); *see also People v. Varallo*, 913 P.2d 1, 10–11 (Colo.1996) (the presumed sanction for knowing conversion of client funds is disbarment, regardless of whether the lawyer intended to permanently deprive the client of those funds).

**11.** 947 P.2d 339, 339 (Colo.1997).

**12.** *Id.* at 339–40; *see also People v. Guyerson*, 898 P.2d 1062, 1062–63 (Colo.1995) (lawyer converted client and firm funds by engaging in fraudulent billing practices on numerous occasions and pled guilty to felony theft); *People v. Robbins*, 869 P.2d 517, 517 (Colo.1994) (lawyer converted $25,000.00 of client funds by withdrawing funds from trust account on seven separate occasions); *People v. Young*, 864 P.2d 563, 563–64 (Colo.1993) (lawyer used funds belonging to four separate clients to cover firm expenses or to cover a

discrepancy in an unrelated account); *People v. Finesilver*, 826 P.2d 1256, 1256–57 (Colo.1992) (lawyer converted at least $150,000.00 in funds from one trust, converted $50,000.00 in funds from a second trust, misappropriated funds from other clients, and forged a court document).

**13.** *See In re Stevenson*, 979 P.2d 1043–44 (Colo. 1999) (disbarment was appropriate sanction for lawyer who did not forward client funds or files after the client attempted to discharge the lawyer; the lawyer had both abandoned the client and misappropriated her funds); *People v. Roybal*, 949 P.2d 993, 996–98 (Colo.1997) (disbarment was appropriate sanction for lawyer who failed to return unearned fees for two clients, abandoned one of those clients, and engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation).

**14.** 991 P.2d 820, 823 (Colo.1999).

**15.** 964 P.2d 514 (Colo.1998).

when a lawyer knowingly misappropriates funds."[16]

The Colorado Supreme Court also emphasized in *In re Cleland* that there is a "bright-line" rule that "disbarment is the presumed sanction when knowing misappropriation is shown...."[17] The Colorado Supreme Court found that it had consistently applied the bright-line presumption of disbarment, and that the rule helps to "eliminate the disparate treatment of lawyers who have committed serious misconduct, when the unequal treatment may otherwise be based on invidious and irrelevant factors."[18]

■ The Court recognizes that the sanction of disbarment should not be imposed without fully considering the context of the misconduct at issue. In *In re Fischer*, the Colorado Supreme Court determined that the hearing board had "overemphasized the notion of a 'presumption of disbarment,' ... and undervalued the importance of other factors in determining the needs of the public."[19] The decision further comments that "[e]ven 'knowing conversions' of funds entrusted to attorneys do not always present the same need for sanctions."[20] But *Fischer* does not suggest that the Court should impose any lesser sanction than disbarment in this matter. *Fischer* imposed a sanction of suspension, rather than disbarment, based on evidence of extensive mitigating factors, including the lawyer's recognition of his ethical violations, his acceptance of responsibility, his cooperative attitude, his excellent reputation, his pro bono service, the opinion of others that he was not a risk to the public, and the absence of prior discipline.[21] Here, by contrast, the Court is unaware of *any* mitigating factors.

Accordingly, the Court determines that the appropriate sanction for Respondent's misconduct is disbarment.

## V.  *CONCLUSION*

■ Respondent entirely abdicated his professional responsibilities in his represen-

tation of the Siecks. Respondent's failure to respond to the Siecks after their tireless efforts to contact him, his continuing failure to return funds that are not rightfully his, and his non-participation in the disciplinary process are disquieting. Such misconduct reflects very poorly on the legal profession. In light of Respondent's misconduct and the need to protect the public from future such misconduct, the Court concludes Respondent should be disbarred.

## VI.  *ORDER*

The Court therefore **ORDERS**:

1. Ronald Lawrence Roberts, Attorney Registration No. 21459, is **DISBARRED** from the practice of law. The disbarment **SHALL** become effective thirty-one days from the date of this order upon the issuance of an "Order and Notice of Disbarment" by the Court and in the absence of a stay pending appeal pursuant to C.R.C.P. 251.27(h).

2. Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or before Wednesday, September 15, 2010.** No extensions of time will be granted.

3. Respondent **SHALL** pay restitution of $4,000.00 plus interest dating from April 16, 2009, to Billy and Carlyn Siecke or, in the alternative, reimburse the Colorado Attorney's Fund for Client Protection for all proceeds that may have been paid to these named clients within thirty-one (31) days of the date of this order.

4. Respondent **SHALL** pay the costs of these proceedings. The People shall submit a "Statement of Costs" within fifteen (15) days of the date of this

16.  991 P.2d at 823 (citation omitted).

17.  2 P.3d 700, 703–04 (Colo.2000).

18.  *Id.* at 704, 704 n. 6.

19.  89 P.3d 817, 822 (Colo.2004).

20.  *Id.*

21.  *Id.* at 820–22.

order. Respondent shall have ten (10) days within which to respond.